## In re Foulke Tax Compromise

*J. B. Held,* for Erie County.

*William J. Carney,* for Erie City School District.

*Edward M. Murphy,* city solicitor, and *Henry R. Jeffs,* assistant city solicitor, for City of Erie.

MORROW, P. J., fourteenth judicial district, specially presiding, July 26, 1941.—The petition of the City of Erie is presented under the Act of May 21, 1937, P. L. 787, for the approval of a proposed private sale of certain real estate therein mentioned. The petition recites the sale of the property to the city by the city treasurer on June 7, 1938, that the property has not been redeemed by the former owner, and that the period of redemption expired on June 7, 1940. The effect of such sale is considered in our opinion filed at no. 238, November term, 1940, where it is held that the former owner no longer has any right in the property. See City of Erie v. A Piece of Land—Myrtle St., 23 Erie 248.

Reference is made in the petition to the Act of November 23, 1938, P. L. 90, as well as to the Act of May 21, 1937, supra. However, this Act of 1938, as appears in its title, relates to the compromise of delinquent taxes on real property before a sale of such real property. Furthermore, it was decided in a recent case (In re Vigliotti Tax Compromise, 39 D. & C. 289) that the court is without jurisdiction under this Act of November 23, 1938, to approve a compromise settlement so as to bind a protesting tax authority. In the matter now under consideration the County of Erie is a protesting tax authority. This procedure, therefore, must be treated as under the Act of May 21, 1937, and further attention to the Act of 1938 need not be given.

The petition states that the total tax indebtedness to the city, the county, and the school district, is the sum of $376.34, and that Erich Bohn and Mary H. Bohn, his wife, have offered to purchase at private sale for the sum of $289.17 the city's tax title to the said property, if the agreement be approved by the court.

According to the petition, the city proposes to deduct from the $289.17 the sum of $103.50 as costs and broker's commission. This leaves net proceeds of sale in the sum of $185.67 to be applied to the delinquent taxes of $376.34. The purchasers are to make payment of the purchase money in five equal annual instalments with the right to anticipate the payments, the unpaid sums to bear interest at two percent per annum. The purchasers are to assume liability for the taxes on the property from and after July 1, 1940.

A hearing was held on said petition July 29, 1940, before Hon. Miles B. Kitts, president judge, at which testimony was taken. In this testimony it is disclosed that the whole contract between the city and the proposed purchasers was not set forth in the petition. It appears that there is a mortgage against the property prior in time to the lien of the taxes. The unpaid principal of this mortgage is $600. In addition the city asserts a sewer claim of $53.30 and a paving claim of $402.70 against this property, to which property it also claims title as aforesaid. The purchasers were to be furnished a title free of all liens and were to pay a total consideration of $530 for the property. This is about $241 in excess of the consideration recited in the petition. The property is assessed at $530. In order to obtain a title free of liens for conveyance by the city, it is proposed to put through a sale of the property to the city, free of liens, following the procedure outlined in section 31 of the Act of May 16, 1923, P. L. 207.

The testimony of Bernard Cochran, a lien clerk for the city, indicates that the city authorities deem it just that a portion of the purchase money should be applied

to the sewer and paving claims before the tax claims are paid in full and that the sanction of the court to such application is sought through this proceeding. Mr. Cochran was asked: "Out of the sale price you are going to pay $241 on the paving lien held by the City of Erie against this lot, is that correct?" He replied; "No, it isn't. We are first going to satisfy our sewer claim." In another place Mr. Cochran was asked by the county solicitor: "What determines and who sets the price of $241 to apply on your paving and sewer liens?" He answered: "The two real estate men who certify to the court here determine first of all whether the lot should be sold at city assessed valuation. The city in all cases says the city assessed valuation is the value of that lot; we assess at 100 percent. If these two real estate men agree that this lot should be sold for $530, we show them the total amount of the school claims and of the county claims for taxes. Then we put to them the proposition of advising the court that we believe the penalty should be abated on all of the three taxing bodies' taxes. Then we get to that figure and if that seems just and equitable to them we ask them if they want to certify that as their opinion of the tax title to the court. If they say they do, they so certify." At another time Mr. Cochran was asked by the solicitor for the school district: "If the court approves this sale and the actual sale price is $530, that is the amount you are going to get from the purchaser, if the court approves this sale, wouldn't you under the law have to distribute that $530 in the payment of city, county, and school taxes before any of it can legally be allocated to the payment of pavement or sewer liens?" He replied: "No sir, I don't think so. I think that under the law the court has the very, very broad discretion here in these matters."

In our opinion this testimony evidences a misconception of the purpose of the Act of May 21, 1937, and of the power of the court thereunder. This act provides

that the proceeds of the private sale of the property shall be distributed to the respective taxing authorities in proportion to their tax claims. No mention is made of mortgages prior in time to the lien of taxes. Where such liens exist or there are other liens not divested by a tax sale and not divested by any order of court under this Act of 1937, and where, as here, the purchaser insists on getting a title free of all liens, then procedure under this Act of 1937 does not seem feasible. After a sale under section 31 of the Act of May 16, 1923, supra, is carried through and a title free of all liens is acquired, as proposed, then the necessity of procedure under this Act of 1937 is not apparent. See our opinions in City of Erie v. A Piece of Land—Myrtle St., supra, filed in the levari facias proceeding at no. 29, September term, 1940.

We are not satisfied that the proposed private sale is proper and to the advantage of all the taxing authorities.

It is stipulated in the record to the effect that this case is similar to 14 other cases now before the court. Therefore, the decision here will control in those cases.

### Order

And now, July 26, 1941, after consideration, the court not being satisfied that the proposed private sale is proper and to the advantage of all the taxing authorities interested, it is ordered and decreed that the petition for approval of said sale be and it is hereby dismissed.